UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PELINA CALVIN,

       Plaintiff,

v.

MICHIGAN FIRST CREDIT UNION,

       Defendant.
_____/

Case No. 19-cv-11519

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT [30] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT [31]**

Plaintiff, Pelina Calvin, brings this case under the Fair Credit Report Act ("FCRA"), 15 U.S.C. §§ 1681o and §§ 1681n. Plaintiff alleges that her credit report tradeline, produced by Defendant, Michigan First Credit Union, is inaccurate because it displays both a closed account status and a non-zero monthly payment balance. Plaintiff has requested Defendant change the non-zero monthly payment balance to zero. Defendant has not changed Plaintiff's tradeline. Plaintiff therefore alleges that Defendant has violated the FCRA negligently per 15 U.S.C. §§ 1681o and willfully per 15 U.S.C. §§ 1681n.

**FACTUAL BACKGROUND**

In either 2014 or 2015, Plaintiff filed for bankruptcy. (ECF No. 30-5, PageID.208). On December 7, 2015, Plaintiff procured a $600 loan from Defendant.

(ECF No. 30-2, 31-2). Plaintiff was to make six monthly payments: five of $105.88 and one final payment of $105.86. (*Id.*)

Between January and March of 2016, Plaintiff made three payments of $105.88. (ECF No. 31-3, PageID.306). Then, Plaintiff failed to make further payments. (*Id.*) On October 6, 2016, Defendant "charged off" the account due to nonpayment. (ECF No. 31-2, PageID.296). When Defendant charged off Plaintiff's account, Defendant accelerated the balance owed by Plaintiff such that the entire remaining debt was due. (ECF No. 30-3, 30-6, 31-2, PageID.297). By December 2017, Plaintiff fully paid the loan balance and no longer owed money to Defendant under this tradeline. (ECF No. 30-5, 31-2, PageID.210-211).

On July 28, 2018, Plaintiff obtained her credit reports from Equifax Information Services, LLC and Trans Union, LLC. (ECF No. 30-4, 31-3, 31-4). The credit reports from both Equifax and Trans Union included a tradeline documenting Defendant's loan to Plaintiff. (*Id.*) The tradeline stated: the account was opened December 7, 2015; the scheduled monthly payment was $105; the balance was $79; and the account status is closed. (*Id.*)

In late 2018 and early 2019, Plaintiff attempted to obtain a mortgage through Keller Williams and Diversified Members Credit Union but was denied. (ECF No. 30-5, PageID.207). Plaintiff testified that both mortgagees stated there were a "number of issues" on Plaintiff's credit report. (*Id.*) Plaintiff testified that her filing

for bankruptcy in 2014 or 2015 was still on her credit report when she applied for the mortgage. (ECF No. 30-5, PageID.208). Neither mortgagee expressed denying Plaintiff a mortgage due to a single tradeline. (ECF No. 30-5, PageID.207, 213). Plaintiff testified that both mortgagees requested more tradelines be added to her account. (ECF No. 30-5, PageID.207-208).

On January 14th, 2019, Plaintiff submitted letters to Equifax and Trans Union which disputed credit report information furnished by the Defendant. Both letters stated "You are reporting that I owe a scheduled monthly payment of $105 . . . this is incorrect as the account . . . is closed . . . Please report the monthly payment as $0." (ECF No. 30-7, 31-5). Plaintiff did not receive dispute reports from Equifax or Trans Union. On March 4, 2019, Plaintiff obtained her credit reports from Equifax and Trans Union again. (ECF No. 31, PageID.280). The monthly payment amount listed in the credit reports remained unchanged. (ECF No. 31-8, 31-9).

## PROCEDURAL BACKGROUND

On May 21, 2019, Plaintiff filed suit against Defendant for negligent failure to comply with the FCRA per 15 U.S.C. §§ 1681o and willing failure to comply per 15 U.S.C. §§ 1681n. Plaintiff filed the same allegations against Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union"). On May 23, 2019, the Defendants removed this case from Wayne County Circuit Court. (ECF

No. 1). On October 16, 2019, Plaintiff settled with Trans Union. (ECF No. 27). On February 13, 2020, Plaintiff settled with Equifax. (ECF No. 29).

On February 14, 2020, the remaining Defendant, Michigan First, filed a Motion for Summary Judgement to dismiss both claims. (ECF No. 30). On February 18, 2020, Plaintiff filed her Motion for Partial Summary Judgement on her 15 U.S.C. §§ 1681o claim (negligent violation of FCRA). (ECF No. 31). Both motions have been fully briefed, and a hearing was held on June 10, 2020.

## LEGAL STANDARD

Both parties bring motions under FED. R. CIV. P. 56. When evaluating a motion for summary judgment, the Court must consider the evidence on the record, drawing all inferences in the non-movant's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The question on summary judgment is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party "may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations…[but instead] must present affirmative evidence." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).

## ANALYSIS

Congress enacted the FCRA so that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit." 15 U.S.C. § 1681(b). 15 U.S.C. § 1681s-2(b)(A) requires creditors who furnish information to consumer reporting agencies to "conduct an investigation with respect to the disputed information" whenever a consumer raises a dispute about the credit information the creditor provides. Further, 15 U.S.C. § 1681s-2(b)(E) requires furnishers of credit information to "modify," "delete," or "permanently block the reporting" of any disputed information that the investigation reveals to be "inaccurate." Congress assigned these duties to limit the spread of inaccurate consumer credit information. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012).

Consumers cannot bring suit against creditors for initial inaccuracies. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). Consumers do have

a right of action when creditors either negligently fail to investigate and address inaccuracies per 15 U.S.C. §§ 1681o or willfully fail to do so per 15 U.S.C. §§ 1681n. (*Id*.) The consumer must show, in addition to a *per se* FCRA violation, that the violation resulted in injury in fact, which is traceable to a defendant's conduct, and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Here, Plaintiff fails to meet her burden because 1) Plaintiff fails to show that the tradeline in question is inaccurate, 2) Plaintiff fails to show the Defendant's alleged actions created an injury-in-fact, and 3) Plaintiff relies on inadmissible hearsay, the Credit Reporting Resource Guide, to show negligence in the Defendant's conduct.

**Accuracy of the Tradeline**

In order to recover under 15 U.S.C. §§ 1681n or 1681o, a consumer must demonstrate that the creditor furnished inaccurate information. *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996). When 15 U.S.C. §§ 1681n or 1681o claims refer to a violation of § 1681s-2(b) requirements, courts determine the accuracy of credit information under the "materially misleading" standard. *See Pittman,* 901 F.3d at 629–30, *Walker v. Equifax Info. Servs., LLC*, No. 2:19-cv-12257-SJM-APP, ECF No. 17, PageID.170-172 (E.D. Mich. May 1, 2020), and *Thompson v. Equifax Info. Servs., LLC*, No. 2:18-CV-12495-TGB, 2020 WL 806032, at *11 (E.D. Mich. Feb.

18, 2020). Under the materially misleading standard, the consumer may prove inaccuracy by showing that the credit report misled a creditor. *Pittman*, 901 F.3d at 630. The fact that a layperson could be misled or that the consumer was misled is insufficient. *Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, 318 (6th Cir. 2001). A plaintiff could alternatively provide evidence that a creditor would likely be misled, but such showing is "extremely difficult." *Elsady v. Rapid Global Bus. Sols., Inc.*, 2010 WL 2740154, at * 7 (E.D. Mich. July 12, 2010).

Here, Plaintiff does not show that any creditor was misled. Plaintiff asserts that she was denied mortgages after her request to change the non-zero monthly payment balance on her tradeline. (ECF No. 32, PageID.400). However, Plaintiff does not present evidence that a creditor was misled by the non-zero monthly payment balance on her tradeline. During Plaintiff's deposition, Plaintiff stated the creditors informed her there were "a number of issues" with her credit, requested she add more lines of credit, and did not specify a single tradeline as the reason behind their decision. (ECF 30-5, PageID.207, 213). Further, Plaintiff confirmed that her bankruptcy filing from 2014 or 2015 was still on her credit report and was "creating an issue" for her. (ECF 30-5, PageID.208). Since Plaintiff did not show that a creditor was misled by the non-zero scheduled monthly payment tradeline or that a creditor's decision was based on the non-zero scheduled monthly payment

balance rather than other issues with her credit, Plaintiff failed to show Defendant's tradeline resulted in a creditor being misled.

Additionally, Plaintiff failed to show that the tradeline had the potential to mislead a creditor. Credit reports with a non-zero scheduled monthly payment balance and account status of "charged off and closed" have been found not to be materially misleading or factually inaccurate. *Walker*, No. 19-cv-12257, ECF No. 17 PageID.170-172. District courts in this circuit have found scheduled monthly payment fields to be historical and relay only what the monthly payment was before an account was charged off or closed. *See Walker*, No. 19-cv-12257, ECF No. 17, PageID.172 and *Thompson*, No. 2:18-CV-12495-TGB, 2020 WL 806032, at *11.

Since Plaintiff has not demonstrated the existence of a material fact as to whether the tradeline misled or could mislead a creditor, she is incapable of proving that the tradeline is materially misleading as a matter of law. Even taken in the light most favorable to Plaintiff, the tradeline is therefore not inaccurate within the meaning of 15 U.S.C. §§ 1681n and 1681o claims.

**Injury-In-Fact**

In order to recover for a credit reporter's FCRA violations, consumers must show they suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. Tradelines which show a non-zero scheduled monthly payment

balance and a closed or charged off account status have been found not to cause injuries-in-fact. *Thompson*, No. 2:18-CV-12495-TGB, 2020 WL 806032, at *1, 3-4.

Here, Plaintiff fails to show the Defendant's conduct resulted in any concrete harm. Plaintiff asserts that she was denied mortgages after her request to change the non-zero monthly payment balance on her tradeline. (ECF No. 32, PageID.400). However, Plaintiff failed to show how the non-zero monthly payment balance resulted in adverse decisions from creditors who reviewed her credit history. (ECF No. 30-5, PageID.207-208, 213). Plaintiff also failed to show how the non-zero monthly payment balance would produce adverse decisions from these creditors, as opposed to her other credit problems such as filing for bankruptcy and having few lines of credit. (ECF 30-5, PageID.208). Therefore, independent of the tradeline's accuracy, Plaintiff has not demonstrated how Defendant's alleged conduct would have harmed her chances of obtaining credit.

**Credit Reporting Resource Guide**

Plaintiff relies on Credit Reporting Resource Guide ("CRRG") requirements to assert that Defendant acted at least negligently. (ECF No. 31 PageID.279). The CRRG requires the monthly payment amount on closed or charged off accounts to be changed to zero. (ECF No. 31-6). Plaintiff cites *Gallaher v. US Bank Nat'l Ass'n*,

No. 14-cv-1877, 2017 WL 2111593, at *7 (D. Conn. May 15, 2017) for the proposition that the CRRG as an industry standard.

Courts in this circuit have concluded that the CRRG is not dispositive on FCRA compliance. The CRRG is published by the Consumer Data Industry Association, and federal laws of commerce and trade, including the FCRA, do not mandate perfect compliance with CRRG. *Fulton v. Equifax Info. Servs., LLC*, No. 15-14110, 2016 WL 5661588, at *3 (E.D. Mich. Sept. 30, 2016). "The [*Gallaher*] court did not recognize the CRRG as the industry standard or conclude that compliance or non-compliance with its provisions was conclusive evidence of accuracy or inaccuracy." *Thompson*, No. 2:18-CV-12495-TGB, 2020 WL 806032, at *11. The CRRG has not been considered when determining the accuracy of a tradeline with non-zero monthly payments. *Id*. Courts have held that CRRG requirements are inadmissible hearsay because CRRG's guidelines are out-of-court statements by an industry group, because CRRG requirements have no statutory authority, and because the consumer did not provide expert witness testimony authenticating CRRG guidelines as industry standard. *Euring*, No. 19-CV-11675, 2020 WL 1508344, at *9.

Plaintiff's argument parallels the consumer's argument in *Euring* because both claim that non-zero monthly payment amounts on closed accounts depart from CRRG guidelines. However, just as the consumer in *Euring* did not proffer an expert

witness to establish the CRRG guidelines as an industry standard, Plaintiff did not proffer expert witness testimony to establish CRRG guidelines as an industry standard.

Plaintiff relies on *Lovelace v. Equifax Information Services, LLC*. In *Lovelace*, the plaintiff cited the CRRG in their argument concerning charged off accounts with non-zero monthly payment balances to deny a defendant's motion to dismiss, and prevailed. *Lovelace v. Equifax Info. Servs. LLC*, No. CV-18-04080-PHX-DWL, 2019 WL 2410800, at *1 (D. Ariz. June 7, 2019). The *Lovelace* court denied the defendant's motion because the defendant submitted a screenshot of the credit report, and the plaintiff raised that a screenshot is not evidence properly before the court. *Id*. at 2. In its opinion, the *Lovelace* court also noted that CRRG requirements alone were inadmissible for summary judgement analysis. *Id*. The court recommended the defendant refile their motion after properly attaching the relevant credit report. *Id*. at 4.

## CONCLUSION

Plaintiff had the burden to prove that the evidence, taken in the light most favorable to her position, could reasonably be interpreted to show that her credit report tradeline—by virtue of displaying a charged off account status and non-zero monthly payment balance—misled another creditor and resulted in an injury-in-fact. Plaintiff failed to meet this burden because she did not connect the non-zero monthly

payment balance to a misguided action by another creditor or mortgagee. Plaintiff failed to show how the creditor's decisions attributed to the non-zero monthly payment balance. Finally, Defendant's noncompliance with the CRRG does not show negligence or willful misconduct in adherence to the FCRA.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgement [30] is **GRANTED.** Plaintiff's Motion to for Partial Summary Judgement [31] is **DENIED**.

**SO ORDERED**.

                                                 s/Arthur J. Tarnow
                                                 Arthur J. Tarnow
Dated: July 14, 2020                 Senior United States District Judge